# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LISA FLOYD-JEFFERSON,

        Plaintiff,           :        Case No. 2:17-CV-352

  - vs -                           Judge Sarah D. Morrison
                                Magistrate Judge Elizabeth Preston Deavers

REYNOLDSBURG CITY SCHOOLS
BOARD OF EDUATION,

                                :

        Defendant.

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendant Reynoldsburg City Schools, Board of Education. (ECF No. 16.) Plaintiff Lisa Floyd-Jefferson filed a Memorandum Contra to the Motion (ECF No. 21), and the Defendant lodged a Reply (ECF No. 28). Pursuant to the Court's August 9, 2019 Order (ECF No. 30), Reynoldsburg filed a Supplemental Motion for Summary Judgment (ECF No. 31) and a Motion to Strike (ECF No. 32). Responses and Replies were filed as to each of those additional motions. (ECF Nos. 33-37.) Being fully advised on all issues, the Court finds that the motion to strike is **MOOT** and the Court **GRANTS** the summary judgment motions (ECF Nos. 16, 31) in part pursuant to the following analysis.

**I.    BACKGROUND**

Floyd-Jefferson, an African-American female, filed her March 2017 Complaint in the Franklin County, Ohio Court of Common Pleas, alleging violations of state and federal discrimination and compensation laws against her current employer, Reynoldsburg. (ECF No. 2). Reynoldsburg timely removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1447. (ECF No. 1).

1

Reynoldsburg has employed Floyd-Jefferson since August 2012. (ECF No. 2, ¶ 1). Relevantly, she worked for Reynoldsburg as an Assistant Principal at Baldwin Junior High from 2012 until August 2014, earning $73,000 annually. (Alig Aff. ¶ 7.) Mr. Steve Tartt, an African-American male, assumed that role in 2014 for an annual salary of $80,767. *Id*. ¶¶ 38-42.)

In August 2014, pursuant to a one-year contract with Reynoldsburg, Floyd-Jefferson became an "Administrative Curriculum Specialist." *Id*. ¶ 9. She was paid $73,000 annually. *Id*. ¶ 9. In that administrative capacity, she supervised three instructional coaches. Ms. Carmen Adkins-Pritchett, a white female, was one of those coaches. *Id*. ¶¶ 9-14. Adkins-Pritchett worked in that capacity under a teaching contract with Reynoldsburg. *Id*. ¶ 13. Adkins-Pritchett focused her efforts on math. *Id*. ¶ 11.

In January 2015, Reynoldsburg informed Floyd-Jefferson that her curriculum specialist contract would not be renewed for the 2015-2016 school year due to budget cuts. *Id*. ¶ 18; *see also* Floyd-Jefferson Aff. ¶ 4. Hence, in May 2015, Floyd-Jefferson applied for, and was offered, a math teaching position at Hannah Ashton Middle School. Alig Aff. ¶ 20; *see also* Floyd Jefferson Aff. ¶ 4; *see also* ECF No. 28 at Ex. B. Thereafter, Reynoldsburg advised Floyd-Jefferson that she would be required to resign her Administrative Curriculum Specialist position so that Reynoldsburg could employ her as a math teacher at Hannah Ashton. (Alig Aff. ¶ 21.) In other words, Reynoldsburg could not employ her as both an administrator and as a teacher at the same time. *Id*. ¶ 23.

At its April 21, 2015 meeting, Reynoldsburg non-renewed her administrator contract and took action to employ her at Hannah Aston for the 2015-2016 school year. *Id*. ¶ 15. Thereafter, Reynoldsburg sent the resultant teaching contract to Floyd-Johnson. Specifically, the offer was for $66,741 a year with credit for ten years of teaching. *Id*. ¶ 26.

In May 2015, Floyd-Jefferson declined to resign and returned the offer to Reynoldsburg unsigned. *Id.* ¶ 24; *see also* ECF No. 28 at Ex. B. Her related correspondence indicated that she did not sign the contract in part because she was not "fully convinced that [she was] welcome and [would] be treated equally and/or evaluated fairly should [she] continue to be employed with Reynoldsburg City Schools." (ECF No. 28 at Ex. B.) Reynoldsburg then rescinded its non-renewal of Floyd-Anderson's administrative contract, and also withdrew its April 2015 Hannah Ashton teaching offer in July 2015. *Id.* Instead, Reynoldsburg awarded her a two-year contract at $73,000 annually as an "administrator on special assignment." (Alig Aff. ¶ 30.) The special assignment position required 232 days of work per year and included 11 paid holidays. *Id.* at ¶ 32. Floyd-Jefferson accepted that offer and signed the related contract on July 31, 2015. (ECF No. 28 at Ex. B.) As of August 1, 2015, Reynoldsburg continue to employ Floyd-Jefferson as an administrator albeit under a new contract. *Id.*

In October 2015, another math teaching position became available at Hannah Ashton. (Alig Aff. ¶ 36.) Floyd-Jefferson requested to be transferred to that job. Reynoldsburg denied her request, again telling her that it could not simultaneously employ her as both an administrator and as a teacher. *Id.* ¶ 37.

Floyd-Jefferson lodged a charge of discrimination with the United States Equal Opportunity Employment Commission and with the Ohio Civil Rights Commission on January 7, 2016. (ECF No. 2 ¶ 3.) She received a right-to-sue letter dated December 22, 2016.[1] *Id.* ¶ 37. This case followed in March 2017.

---

[1] She did not attach her charge or her right to sue letter to the Complaint. The letter "is a condition precedent and not a jurisdictional requirement." *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998). Neither Reynoldsburg's Answer or its Motions for Summary judgment take issue with Floyd-Jefferson's satisfaction of this condition precedent to the instant suit.

3

Floyd-Jefferson's Complaint alleges in Counts One through Four that Reynoldsburg denied her promotional opportunities between May and October 2015 due to her race and sex in violation of Title VII 42 U.S.C. § 2000 *et seq*. ("Title VII"), O.R.C. Chapter 4111 and O.R.C. Chapter 4112. (ECF No. 2 ¶ ¶ 7-10.) She further asserts Reynoldsburg unlawfully denied her equal pay due to her race and sex under Title VII and O.R.C. Chapter 4111 in Count Five. *Id*. ¶ 11. In Count Six, she next claims that Reynoldsburg failed to pay her for work performed during a teacher's strike as well as for continuing education courses in violation of an unspecified federal law and O.R.C. Chapter 4113. *Id*. ¶ 12. Finally, Floyd-Jefferson presents claims for hostile work environment (Count Seven) and retaliation (Count Eight) pursuant to unspecified laws. *Id*. ¶ ¶ 12-13.

Reynoldsburg's Motions for Summary Judgment and its Motion to Strike followed and are presently ripe for decision.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Waters v. Drake*, 222 F. Supp. 3d 582, 595-96 (S.D. Ohio 2016) (citing *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009)). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Waters*, 222 F. Supp. 3d at 595-96 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) and *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

4

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). In this regard, " '[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact.' " *Thomas v. Ohio Civil Rights Comm'n*, No. 2:04-cv-0944, 2006 U.S. Dist. LEXIS 41027, at *10-11 (S.D. Ohio June 20, 2006) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Thomas*, 2006 U.S. Dist. LEXIS 41027, at *10-11 (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, the Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## III. MOTION TO STRIKE

Floyd-Jefferson was under contract with Reynoldsburg as an Instructional Coach for the 2018-2019 school year. Floyd-Jefferson mentions that in her Opposition, and notes that she was given credit for her years of experience in this role. (ECF No. 21 at 10.) She argues she would have received a higher salary for the 2015-2017 school years if Reynoldsburg had included her years of experience then when finalizing her salary for those years. *Id.* at 10-11. Reynoldsburg's Motion to Strike (ECF No. 32) labels Floyd-Jefferson's inclusion of this information as "irrelevant, prejudicial, nonprobative [and] misleading" such that exclusion is proper under Fed. Rs. Evid. 401, 403 and 407. (ECF No. 28 at 16; ECF No. 32.)

Reynoldsburg additionally notes that Floyd-Jefferson's Affidavit recounts pre-suit communications made to her lawyer by Reynoldsburg's counsel. (ECF No. 25-7; ECF No. 32.) Thus, Reynoldsburg moves to strike that portion of Floyd-Jefferson's Affidavit on hearsay grounds pursuant to Fed. Rs. Evid. 801 and 802. (ECF No. 28 at 16; ECF No. 32.)

Floyd-Jefferson opposes, arguing that her 2018-2019 contract is relevant because it "disproves [Reynoldsburg]'s justification for unequal pay being based on seniority . . . ." (ECF No. 35.) She further states she cannot respond to Reynoldsburg's motion to strike affidavit testimony as hearsay "without knowing specifically the hearsay to which [Reynoldsburg] is referring." (ECF No. 35 at 2.)

Reynoldsburg replies, noting that Floyd-Jefferson's contract argument is irrelevant because it is based upon a policy that did not exist during May through October 2015, the timeframe in focus. (ECF No. 36 at 2.) Reynoldsburg additionally points out that its motion highlighted the specific paragraph of Floyd-Jefferson's Affidavit it sought to strike on hearsay grounds. *Id*. 3.

In reaching its determination on the motions for summary judgment, the Court did not consider what Reynoldsburg seeks to strike. As such, Reynoldsburg's Motion to Strike (ECF No. 32) is **MOOT**.

IV. ANALYSIS

Reynoldsburg's instant Motions for Summary Judgment assert full judgment in its favor is proper because some of Floyd-Jefferson's claims are barred by the applicable statute of limitations and the remainder warrant dismissal because Floyd-Jefferson cannot sustain her burden under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Floyd-Jefferson counters precisely the opposite—that is, her claims are timely and that she does satisfy her *McDonnell Douglas* burden. Reynoldsburg's contentions prevail.

**A. Counts One Through Four: Federal and State Race and Gender Discrimination**

As highlighted above, Floyd-Jefferson asserts Reynoldsburg discriminated against her in violation of Title VII and O.R.C. Chapter 4112 on the basis of her gender and race by denying her promotions and failing to reinstate her administrator contract. The Court determines that judgment in Reynoldsburg's favor on those counts is warranted because Floyd-Jefferson fails to sustain her requisite *McDonell-Douglas* burden.

Title VII pertinently provides that "it shall be an unlawful employment practice for an employer—to . . . discriminate against any individual with respect to his compensation, terms,

7

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.S. § 2000e-2. Similarly, R.C. 4112.02 states:

> [i]t shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Because the Sixth Circuit has recognized that the standards applicable to Title VII and Ohio Revised Code § 4112 claims are the same, the Court will address these claims together. *Laderach v. U-Haul*, 207 F.3d 825, 828 (6th Cir. 2000).

Floyd-Jefferson offers no direct evidence of discrimination. Hence, the Court utilizes the *McDonnell Douglas* burden-shifting framework when considering her failure to promote and failure to reinstate discrimination counts. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802, as modified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). Accordingly, to succeed on these claims, Floyd-Jefferson has the burden of establishing a *prima facie* case of employment discrimination through demonstrating, by a preponderance of the evidence, that she: (1) was a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and, (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *White*, 533 F.3d at 391. If she proves her *prima facie* case, the burden shifts to Reynoldsburg to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id*. Finally, if Reynoldsburg meets this burden, the burden then shifts back to Floyd-Jefferson to demonstrate that the reason articulated was not the true reason, but merely a pretext for discrimination. *Id*.

Reynoldsburg's motion is premised upon its contention that Floyd-Johnson cannot sustain her *prima facie* burden such that judgment is warranted in its favor on the highlighted claims. (ECF No. 16 at 11-17.) Specifically, while conceding Floyd-Jefferson is a member of a protected class, Reynoldsburg maintains she has not been subject to an adverse employment action.[2] *Id*. Floyd-Jefferson responds that she did suffer such an action when Reynoldsburg non-renewed her administrative curriculum specialist contract while approving her Hannah Ashton contract as a math teacher at a lower salary. (ECF No. 21 at 6-7.)

The United States Supreme Court defines an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as well as the denial of a raise or promotion." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). A materially adverse employment action "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities,'" and a materially adverse change might be indicated by "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)).

While Reynoldsburg did not renew her curriculum specialist contract, it ultimately rescinded the offer of a teaching contract and instead offered her a two-year contract as an "Administrator on Special Assignment" at an annual salary of $73,000. She accepted this

---

[2] Reynoldsburg also asserts that Floyd-Johnson is not similarly situated to her proffered comparators, Tartt and Atkins-Pritchett. Because the Court finds that Floyd-Johnson has not suffered an adverse employment action, the Court does not address this contention.

contract and her compensation was the same as what she earned in her prior position as an Administrative Curriculum Specialist. In addition, while her Administrative Curriculum contract was for one year, her Administrator on Special Assignment agreement was for two years.

The Sixth Circuit has held that reassignments without salary changes do not ordinarily constitute adverse employment actions. *See Kocsis v. Multi-Care Management Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987)). Additionally, "'barring unusual circumstances, . . . a transfer at no loss of title, pay, or benefits does not amount to . . . [an] adverse employment action.'" *Black v. Columbus Pub. Sch.*, 124 F. Supp. 2d 550, 565-66 (S.D. Ohio 2000) (*quoting Darnell v. Campbell County Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), aff'd, 924 F.2d 1057 (6th Cir. 1991)).

As noted, Floyd-Jefferson experienced no salary change between her administrative contracts. Floyd-Jefferson does not contend that her benefits changed. Moreover, there is no evidence of any material change in her responsibilities because she continued to perform administrative work. Under these circumstances, and pursuant to *Kocsis* and *Black*, the Court holds that Floyd-Jefferson did not prove by a preponderance of the evidence that she sustained an adverse employment action. This failure is fatal to her gender and race claims for failure to promote and failure to reinstate her administrative contract claims. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014). Reynoldsburg's Motion for Summary Judgment (ECF No. 16) on Counts One through Four is therefore granted.

**B. Count Five – Unequal Pay**

**1. Federal Claims**

Reynoldsburg contends that Floyd-Jefferson's federal race and sex discrimination unequal compensation claims are barred on limitations grounds by 42 U.S.C. § 2000e-5(e)(1) and R.C. §

4111.17(E). The Court concurs.

To bring a Title VII claim, a plaintiff must timely file a discrimination charge with the EEOC. *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 407 (6th Cir. 1999). To be timely, the charge must be filed within 180 or 300 days from the date of "the alleged unlawful employment practice. . . ." 42 U.S.C. § 2000e-5(e)(1). The Sixth Circuit explains Title VII's dual statute of limitations as follows:

> Usually, if the alleged discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a 'deferral state,' in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act.

*Alexander*, 177 F.3d at 407 (citing 42 U.S.C. § 2000e-5(e)). Because Ohio is a deferral jurisdiction, a plaintiff has 300 days to file a discrimination charge with the EEOC as a matter of law. *See Winkelmann v. Big Lots Stores, Inc.*, No. 1:08-cv-00419, 2009 U.S. Dist. LEXIS 104902, 2009 WL 3788673, at *6 and n. 1 (S.D. Ohio Nov. 10, 2009) (Spiegel, J.). Here, Floyd-Jefferson filed her EEOC charge on January 7, 2016.

Floyd-Jefferson asserts Reynoldsburg discriminated against her based on her sex by paying Tartt more than her for the assistant principal position. (ECF No. 21 at 5.) Reynoldsburg reasons that because Floyd-Jefferson's last day in that position was July 31, 2014 and Tartt assumed that job on August 1, 2014, the 300-day period should run from the later date or, at the latest, from October 21, 2014 when Reynoldsburg approved Tartt's higher salary. (ECF No. 16 at 9.) August 17, 2015 is 300 days after October 21, 2014. Accordingly, because Floyd-Jefferson did not lodge her charge until January 7, 2016, Reynoldsburg contends that her federal salary sex discrimination counts are barred under 42 U.S.C. § 2000e-5(e)(1).

Floyd-Jefferson does not substantively respond to Reynoldsburg's contention on this point. Rather, Floyd-Jefferson offers that Tartt's employment as assistant principal did not begin until August 1, 2015 such that her January 7, 2016 charge is within the 300-day limit. (ECF No. 21 at 6.) In support, she offers an unauthenticated one-page document entitled "Administrator's Contract" that purports to be from Tartt's contract for the assistant principal position for August 1, 2015 through July 31, 2016 at the annual salary of $80,767. *Id.* at Attachment 6. The Court cannot consider unauthenticated documents submitted in support of summary judgment filings. *Welden v. Hale*, No. 2:15-cv-2410, 2017 U.S. Dist. LEXIS 128452, at *24 (S.D. Ohio Aug. 14, 2017). And, by so arguing, Floyd-Jefferson completely ignores Alig's affidavit, which establishes that Tartt first assumed the assistant principal position on August 1, 2014, not August 1, 2015. (Alig Aff. ¶ 41.)

Tartt's start date is key, as it determines the date upon which the statute of limitations begins to run. That is, an "unlawful employment practice" involving salary occurs under Title VII when:

> a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C.S. § 2000e-5. Contrary to Floyd-Jefferson's position, the record establishes Tartt became an assistant principal on August 1, 2014 at a salary higher than Floyd-Jefferson's for the same position. (Alig Aff. ¶ 39-42 and Ex. 5 thereto.) Reynoldsburg adopted that higher salary on October 21, 2014. *Id.* Thus, the Court agrees with Reynoldsburg that Reynoldsburg's decision to hire Tartt for the same job at a higher salary subjected Floyd-Jefferson to an allegedly unlawful employment

practice effective October 21, 2014. That is the date upon which Floyd-Johnson became affected by Reynoldsburg's compensation decision relative to Tartt. That the allegedly discriminatory practice may have continued into 2015-2016 is irrelevant, because the quoted language establishes that Floyd-Jefferson become affected by the change, at the latest, on October 21, 2014. Because Floyd-Jefferson did not file her charge until more than 300 days after that date, her federal sex compensation discrimination claims are barred under 42 U.S.C.S. § 2000e-5. Reynoldsburg's Motion for Summary Judgment (ECF No. 16) on these claims is **GRANTED**.

Reynoldsburg also contends the same fate is warranted for Floyd-Jefferson's federal race-based compensation counts. In this regard, Floyd-Jefferson asserts Adkins-Pritchett was paid more for performing the duties of a math instructional coach than what Floyd-Jefferson received as Adkins-Pritchett's supervisor. (ECF No. 2 ¶ 3; *see also* ECF No. 21 at 8.) Adkins-Pritchett assumed the coaching role in January 2015. As established above, a discriminatory compensation decision occurs when an individual "becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision …." 42 U.S.C.S. § 2000e-5. Accordingly, Floyd-Jefferson was affected by Adkins-Pritchett's higher salary on January 31, 2015 at the latest. Floyd-Jefferson therefore had until November 27, 2015 to lodge her charge. Because she did not do so until January 7, 2016, Floyd-Jefferson's federal race-based discriminatory compensation counts are barred under 42 U.S.C. § 2000e-5(e)(1). Reynoldsburg's Motion for Summary Judgment (ECF No. 16) on this count is therefore **GRANTED**.

2. **State Claims**

Reynoldsburg moves for summary judgment on Floyd-Jefferson's state unequal pay counts on statute of limitation grounds under R.C. § 4117.11. (ECF Nos. 16, 31.) Because the Court

13

dismisses all federal claims, the Court declines to exercise supplemental jurisdiction over Floyd-Jefferson's state claims found in Count Five. Those claims are **REMANDED** to state court for determination. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

### C. Count Six – Untimely Compensation

Count Six is premised upon R.C. § 4113.15(A). Because the Court dismisses all federal claims, the Court likewise declines to exercise supplemental jurisdiction over this claim. Thus, Count Six is **REMANDED** to state court for disposition. *Id*.

### D. Count Seven – Hostile Work Environment

In this count, Floyd-Jefferson alleges that she was "subjected [to] harassment and verbal abuse by her supervisor creating a hostile work environment." (ECF No. 2 ¶ 13.) What she does not assert, however, is the statutory basis for that claim. Nor does the Complaint specify that the asserted discriminatory behavior was premised upon her race, sex, or both. *Id*. Because the analysis for a Title VII hostile environment claim is the same as the examination for a parallel Chapter 4112 hostile environment claim, the Court proceeds to analyze this count as if Floyd-Jefferson alleges federal and state counts. *Rinehart v. PNC Bank*, N.A., 219 F. Supp. 3d 682, 693-94 (S.D. Ohio 2016). And, because the examination of a racially hostile environment claim is similar to that of a sexually hostile environment claim, the Court shall interpret the Complaint as asserting both.

To reiterate, Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race . . . [or] sex." *See* 42 U.S.C. § 2000e-2(a)(1). R.C. 4112.02(A) states that:

> [i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the race . . . [or] sex . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms,

conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Reynoldsburg maintains its motion should be granted on Floyd-Jefferson's hostile environment claims because "there is simply no evidence in the record that [she] was subject to any harassment because of her race or sex." (ECF No. 31 at 7.) In response, Floyd-Jefferson provides a list of actions and inactions by Reynoldsburg that she apparently feels establish a hostile environment. (ECF No. 33 at 4-5.) Upon examination, the Court determines that summary judgment in Reynoldsburg's favor on these counts is appropriate.

1. **Sex**

"A violation of Title VII is established if discrimination based on sex has created a hostile or abusive work environment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) (internal quotation marks omitted). To establish a hostile work environment claim, a plaintiff must show: (1) she is a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment, and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000). Floyd-Jefferson is an African-American female. Thus, the first prong is satisfied. The remainder are not.

Because "Title VII is not meant to be a 'general civility code,' it prohibits only discrimination and harassment based on sex." *Black v. Columbus Pub. Sch.*, 124 F. Supp. 2d 550, 562-63 (S.D. Ohio 2000) (citing *Bowman*, 220 F.3d at 463-64). So, for the sexual harassment to be actionable, "the workplace must be permeated with discrimination, intimidation, ridicule and insult which is 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Black*, 124 F. Supp. 2d at 562-63 (S.D. Ohio 2000)

(referencing *Powell v. Morris*, 37 F. Supp. 2d 1011, 1016 (S.D. Ohio 1999) (relying on *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, (1993)). The conduct in focus must be judged by both an objective and a subjective standard. *Black*, 124 F. Supp.2d at 562. "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as such." *Id*. (citing *Bowman*, 220 F.3d at 463 (relying on *Harris*, 510 U.S. at 21-22)). "In making this assessment, courts must consider the 'totality of the circumstances.'" *Black*, 124 F.Supp.2d at 562 (citing *Williams*, 187 F.3d at 562 (relying on *Harris*, 510 U.S. at 23)). Accordingly, the Court "must consider the frequency of the conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance." *Black*, 124 F.Supp.2d at 562 (citing *Harris*, 510 U.S. at 21 and *Bowman*, 220 F.3d at 463).

Floyd-Jefferson lists the following as examples of what created a hostile work environment for her based upon her sex:

- Having insufficient time to review her administrative contract in 2015.
- Being excluded from training events.
- Experiencing a work schedule modified in inconvenient ways.
- Changing duties from certified to classified.
- Increasing extra duty responsibilities.
- Having a nonprofessional location for her office.
- Experiencing a discriminatory evaluation process.
- Being denied opportunities to apply for open district positions for the duration of her current two-year contract.

(ECF No. 33 at 6.) Floyd-Jefferson then argues that:

> no white man or woman was treated in the manner described above;

16

> nor would he or she be. The perpetrators, regardless of race, . . . harassed her . . . because they believed she was an "uppity" black woman who had the audacity to embarrass them in challenging lack of professionalism and competence in attempting to non-renew [her] [c]ontract.

*Id*. She proffers nothing else in support—no discussion of the elements, no discussion of case law—nothing. In sum, she conclusory maintains that the highlighted incidents constitute a hostile environment based upon her sex because she believes it to be so.

But her subjective belief, without more, is insufficient to meet her burden under *Bowman*. In addition, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Muller v. Shinseki*, No. 3:12-cv-151, 2014 U.S. Dist. LEXIS 8890, at *19 (S.D. Ohio Jan. 24, 2014) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted); *see also Arnold v. City of Columbus*, No. 2:08-cv-262, 2011 U.S. Dist. LEXIS 35799, at *38-39 (S.D. Ohio Mar. 31, 2011) (same)). Accordingly, Reynoldsburg's Motion for Summary Judgment (ECF No. 31) on Floyd-Jefferson's federal and state hostile work environment claims based on sex is **GRANTED**.

### 2. Race

To establish a *prima facie* case of hostile work environment based on race, Floyd-Jefferson must point to evidence demonstrating that: (1) she is a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with their work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *Arnold*, 2011 U.S. Dist. LEXIS 35799, at *39-41 (citing *Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008)). Again, the parties agree that

Floyd-Jefferson is a member of a protected class. And, again the Court determines that her response to Reynoldsburg's argument as to the remainder of the elements is not enough to survive the pending motions for summary judgment.

The Court's analysis for determining what constitutes a racially hostile environment is the same as for a hostile environment based upon sex. Under that framework, Floyd-Jefferson fails to sustain her burden. That is, she relies upon the same list and same conclusion that those events equate to a hostile work environment, albeit now based on race. (ECF No. 33 at 4-7.) By so doing, she:

> Provide[s] no cogent argument or admissible evidence to establish that any of the allegedly harassing conduct about which [she] complain[s] was "based on race." Moreover, even if [she] had established that element, [she] provides no . . . cogent argument that the harassment was sufficiently severe or pervasive to alter the conditions of their employment. Lastly, [she] provide[s] no evidence or cogent argument that Defendant failed to take reasonable care to prevent and correct any harassing behavior. [She] offer[s] only generalized allegations, which alone are insufficient to establish a case of racially hostile work environment.

*Arnold*, 2011 U.S. Dist. LEXIS 35799, at *46. This is insufficient to sustain her burden under *Bowman*, *Muller*, *Arnold* and *Moore*. Consequently, the Court **GRANTS** Reynoldsburg's Motion for Summary Judgment (ECF No. 31) on Floyd-Jefferson's race-based federal and state hostile environment counts pursuant to those authorities.

**E. Count Eight – Retaliation**

Floyd-Jefferson's retaliation claim is found in Count Eight. (ECF No. 2 at ¶ 14.) What is not contained within that claim, however, is the law upon which the count rests. Rather, Floyd-Jefferson describes Reynoldsburg's actions as "retaliatory" that "adversely impacted her employment, professional status and compensation." (ECF No. 2 ¶ 14.) Because the analysis for

a Title VII retaliation claim is the same as the examination for a parallel Chapter 4112[3] retaliation claim, the Court proceeds to analyze this count as if Floyd-Jefferson alleged a federal and a state retaliation count. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003); *see also White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 U.S. Dist. LEXIS 114975, at *8 (S.D. Ohio July 11, 2018).

In order to prove both a federal and state law claim of retaliation, absent direct evidence of retaliatory discrimination, a plaintiff must show the following:

> (1) she engaged in activity protected by Title VII;
> (2) this exercise of protected rights was known to defendant;
> (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and
> (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Michael*, 496 F.3d at 595 (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)); *see also Putney v. Contract Bldg. Components*, 2009 Ohio App. LEXIS 5634, **30-31, 2009 Ohio 6718 (Ohio 3rd App. Dist. Dec. 21, 2009).

The ostensible activities at issue here are Floyd-Jefferson's "challenging [Reynoldsburg's] lack of professionalism and competence in attempting to non-renew [her] [c]ontract" and her reporting "verbal abuse and fraudulent documentation regarding discussions involving task completion." (ECF No. 33 at 5-6.) Yet, Floyd-Jefferson neither asserts nor argues that those activities were protected. She does not specify to whom she reported those actions. She does not argue that Reynoldsburg knew about her reports. She does not identify the purported adverse employment action or retaliatory harassment. And, the Court holds above that she did not suffer

---

[3] The applicable section is R.C. § 4112.02(I), which makes it an unlawful discriminatory practice for "any person to discriminate in any manner against another person because that person has opposed any unlawful discriminatory practice defined in this section."

19

an adverse employment action. She also does not discuss whether her protected activity caused the adverse action or harassment.

Along those lines, Reynoldsburg notes that Floyd-Jefferson has presented no evidence to support her retaliation claims. Indeed, Floyd-Jefferson uses her same list and conclusory statement for her retaliation count as she did for her hostile environment claims. Thus, Reynoldsburg's characterization of Floyd-Jefferson's opposition as failing to cite case law, failing to address the relevant standards, and failing to provide any factual analysis is correct. As a result, Floyd-Jefferson fails to sustain her burden under *Moore* and *Michael* and judgment in Reynoldsburg's favor on her federal and state retaliation claims is **GRANTED**. *See Muller; see also Adams; see also Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 U.S. Dist. LEXIS 32968, at *58-60 (S.D. Ohio Mar. 31, 2010) (granting summary judgment in defendant's favor because plaintiff made no argument and presented no facts to support his retaliation claim).

## V.     CONCLUSION

For the reasons set forth above, Reynoldsburg's Motion to Strike (ECF No. 32) is **MOOT** and its Motions for Summary Judgment (ECF Nos. 16, 31) are **GRANTED** in part as noted above. Floyd-Johnson's federal claims are **DISMISSED**.  Her state counts for race discrimination, gender discrimination, hostile work environment and retaliation are **DISMISSED**. Her state unequal pay and untimely compensation claims remain pending and are **REMANDED** to state court for resolution.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**Sarah D. Morrison**
**United States District Judge**